IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

TONYA FREEMAN                                                              PLAINTIFF

VS.                                                    CIVIL ACTION NO. 1:07CV146-D-D

MAGNOLIA REGIONAL HEALTH CENTER                                            DEFENDANT

MEMORANDUM OPINION GRANTING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Comes now before this Court, Defendant Magnolia Regional Health Center's ("Magnolia") Motion for Summary Judgment. After reviewing the motion, response, reply, rules, and authorities, the Court makes the following findings:

*A. Factual and Procedural Background*

Magnolia is a community hospital jointly owned by the City of Corinth and Alcorn County, Mississippi, organized and existing pursuant to Title 41 of the Mississippi Code. The Plaintiff, Tonya Freeman, worked for the Defendant from 1992 until 1994 at which time she left for other employment. Plaintiff then returned to Magnolia in 1996 and worked there continuously until her termination on June 1, 2006. Plaintiff was employed as a float nurse, which involved working in several different areas within Magnolia; the day to day position was dictated by the census and staffing needs. During Plaintiff's last employment time with Magnolia, she had frequent "write-ups" for unacceptable behaviour and/or unsatisfactory performance. The Plaintiff admits that at all times during her employment with Magnolia she was an at-will employee.

In 1999, the Plaintiff became involved in acting at the Corinth Theatre-Arts. In addition, she and another Magnolia employee, Jennifer Lambert, acted in a local independent film, "Tragic Flaw." This movie was written, directed and produced by David Maxedon, a local actor and the live-in boy friend of Plaintiff. During a scene in the film where a "murder for hire" was being discussed, a coffee mug bearing the Magnolia name and logo was prominently displayed without Magnolia's consent or approval.

On May 23, 2006, "Tragic Flaw" was shown locally at the Malco Cinema in Corinth, Mississippi at a private screening. Magnolia Nursing Manager Rita Holley was invited by Plaintiff to and attended the private screening of "Tragic Flaw." This is the only time the film has been shown. On or about May 24, 2006, Ms. Holley advised Magnolia's chief executive officer, Rick Napper, about the film and the fact a Magnolia mug was prominently displayed during a "murder for hire" scene. Ms. Holley also expressed concern to Mr. Napper about the Magnolia name and logo being associated with a film featuring vulgar language, sadomasochism, sexual content, illegal drug use, violence and murder. Mr. Napper turned the matter over to the Magnolia Human Resources Department.

On June 1, 2006, Don Long, the Magnolia Human Resources Director at the time, along with, Shelia Calvary, Plaintiff's supervisor, Ruth Johnson, a Registered Nurse with Magnolia, and another unidentified woman, met with Plaintiff. During the approximate fifteen minute long meeting, Plaintiff admitted that the mug in the film belonged to her and had been given to her by Magnolia. Don Long informed Plaintiff that due to the fact that her Magnolia mug had been utilized in this film, she was being terminated. However, none of the people present in the meeting have viewed the film, "Tragic Flaw."

Based on this termination, Plaintiff filed her original lawsuit on June 22, 2007, and her Amended Complaint on June 25, 2007 alleging wrongful termination and seeking damages pursuant to 42 U.S.C. §1983 relying upon the following theories: violation of First Amendment to the United States Constitution right of free speech, violation of the Fourteenth Amendment to the United States Constitution procedural and substantive due process, and a pendent state law claim of a handbook violation. Magnolia timely filed its Answer and Defenses on August 24, 2007 in which it denied all liability for Plaintiff's claims. The Court finds that Plaintiff has presented no evidence of any genuine issue of material fact as to any of her claims including her pendant state law claim of a handbook violation and therefore, those claims are addressed below.

### B. Summary Judgment Standard

Summary judgment is warranted under Rule 56(c) of the Federal Rules of Civil Procedure when evidence reveals no genuine dispute regarding any material fact, and the moving party is entitled to judgment as a matter of law. The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact. Id. at 323, 106 S. Ct. 2548. Under Rule 56(e) of the Federal Rules of Civil Procedure, the burden then shifts to the non-movant to "go beyond the pleadings and by...affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex Corp., 477 U.S. at 324; Willis v. Roche Biomedical Labs., Inc., 61 F.3d 313, 315 (5th

Cir. 1995); Littlefield v. Forney Indep. Sch. Dist., 268 F.3d 275, 282 (5th Cir. 2001). That burden is not discharged by "mere allegations or denials." Fed. R. Civ. P. 56(e). Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments are not an adequate substitute for specific facts showing a genuine issue for trial. TIG Ins. Co. v. Sedgwick James of Wash., 276 F.3d 754, 759 (5th Cir. 2002); SEC v. Recile, 10 F.3d 1093, 1097 (5th Cir. 1997); Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

*C. Discussion*

*i. Section 1983*

Section 1983 provides that any person who, under color of state law, deprives another of "any rights, privileges or immunities secured by the Constitution and laws shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ..." 42 U.S.C. § 1983. Rather than creating substantive rights, § 1983 simply provides a remedy for the rights that it designates. Thus, an underlying constitutional or statutory violation is a predicate to liability under § 1983. As discussed below, Plaintiff has failed to prove a constitutional or statutory violation to create liability under § 1983.

Additionally, a governmental entity is liable only when the plaintiff "demonstrate[s] a policy or custom which caused the constitutional deprivation." Colle v. Brazos County, Texas, 981 F.2d 237, 244 (5th Cir. 1993). *See also* Monell v. Dept. of Social Servs., 436 U.S. 658, 691, 98 S. Ct. 2018, 2036, 56 L.Ed.2d 412 (1989); Piotrowski v. City of Houston, 51 F.3d 512 (5th Cir. 1995); Lefall v. Dallas Indep. Sch. Dist., 28 F.3d 521, 525 (5th Cir. 1994). Magnolia is a community hospital jointly owned by the City of Corinth and Alcorn County, Mississippi. Therefore, Plaintiff must identify a policy, custom or practice of Magnolia which deprived her of the constitutional right, connect the policy to the governmental entity itself, and show that her

injury was caused because of the application of such specific policy. Bennett v. City of Slidell, 728 F.2d 762, 767 (5th Cir. 1984). Plaintiff has failed to identify a custom, policy or practice of Magnolia which acts to violate its employees' 1st or 14th Amendment rights.

### ii. *First Amendment Claim*

First, the court must determine whether the Plaintiff has alleged the violation of a clearly established constitutional right in regard to her claims under the First Amendment. In order to survive summary judgment as to her First Amendment retaliation claim asserted against Magnolia, Plaintiff must establish each of the following elements:

1. That she suffered an adverse employment decision;

2. That her speech involved a matter of public concern;

3. That her interest in commenting on matters of public concern outweighed the employer's interest in promoting efficiency; and

4. That her speech motivated the employer's action or decision to terminate.

Teague v. City of Flower Mound, Texas, 179 F.3d 377, 380 (5th Cir. 1999) (*citing* Pickering v. Board of Education, 391 U.S. 563 (1968)).

Magnolia concedes the first and fourth elements: Plaintiff was terminated from Magnolia and the use of her Magnolia mug in the film was the motivating factor behind Magnolia's decision to terminate her.

The Supreme Court has held that the First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen on matters of public concern. Garcetti v. Ceballos, 547 U.S. 410, 417, 126 S. Ct. 1951, 1957, 164 L. Ed. 2d 689 (2007); Pickering v. Board of Educ., 391 U.S. 563, 568, 88 S. Ct. 1731, 1734-35, 20 L. Ed. 2d 811 (1968); Connick, 461 U.S. 138, 147, 103 S. Ct. 1684; Rankin v. McPherson, 483 U.S. 378, 384, 107 S. Ct. 2891,

97 L. Ed. 2d 315 (1987); United States v. Treasury Employees, 513 U.S. 454, 466, 115 S. Ct. 1003, 130 L. Ed. 2d 964 (1995); Williams v. Dallas Ind. Sch. Dist., 480 F.3d 689, 691-92 (5th Cir. 2007).

Pursuant to the Supreme Court's ruling in Garcetti, following Pickering, a public employee's speech is protected *only* when (1) the employee is speaking as a citizen; (2) on a matter of public concern; and (3) the government employer does not have adequate justification for treating the employee differently from any other member of the general public as a result of the statement he or she made. Garcetti, 547 U.S. at 418 (*emphasis added*). There is no dispute in the present case that the Plaintiff was not acting in any official capacity when she appeared in the film, "Tragic Flaw" but was acting in the film as a citizen.

The Supreme Court in Connick held that a public employee's speech is entitled to Pickering balancing only when the employee speaks "as a citizen upon matters of public concern" rather than "as an employee upon matters only of personal interest." Connick, 461 U.S. at 147, 103 S. Ct. 1684. Although the public concern test is not well defined, Connick provides some guidance by directing courts to examine the "content, form, and context of a given statement, as revealed by the whole record." Id., at 146-147, 103 S. Ct. 1684.

Plaintiff claims that the subject matter of the film is domestic violence. The Court has reviewed the film and is of the opinion that though domestic violence, through sadomasochism[1], is present in the film, it is by no means depicted in a light that is of public concern. The overall plot of the movie is a murder plot by two lesbian lovers gone bad. The movie opens with a flashback to a lesbian love scene between the wife of the doctor and another woman, whom the Plaintiff plays. The movie then flashes forward to several scenes in which the lesbians discuss

---

[1] a sexual practice that can be incorporated into the general lifestyle of a person by which sexual gratification is reached through torturing others or being tortured by others (usually a passion partner) or humiliating or being humiliated by others.

killing the doctor. Then there is a scene in which "the good doctor,"[2] his wife and Plaintiff act out a sadomasochist play where the doctor beats his wife and requires her and the Plaintiff to perform humiliating acts. The murder plot then unfolds: the lesbian lovers hire a hit man to dispose of the doctor's body after the two women kill him. However, the doctor learns of their plot and contacts the hit man and offers him more money to dispose of the two ladies' bodies. The women poison the doctor, he acts out his death and the hit man and the hit man's wife carry the doctor's body to his shop. Once the doctor, the hit man and his wife arrive in the hit man's shop, the three discuss various topics, such as sadomasochism and killing the two women, during which the hit man's wife is seen ingesting cocaine and the hit man carries around a Magnolia mug. The movie ends with a shoot-out in which "the good doctor" and the hit man are killed and the lesbians shoot the hit man's wife.

Obviously, the presence of one sadomasochist scene and the two women discussing these acts does not make it a movie addressing a matter of public concern. The overall theme is not of domestic abuse and the court finds that Plaintiff's claim that the theme of "Tragic Flaw" is of public concern to be totally unfounded. The court agrees that domestic violence is indeed a matter of public concern in this country; however, there is no question that the film was not made to address the issue of domestic violence and contains no public service message for the public such as self-help, outside of murder. In fact, Plaintiff testified that the movie was entirely for entertainment purposes and was not intended for public release.

In addition, the use of the Magnolia mug in the scene during which the hit man and the doctor discuss the murder of the lesbians had nothing to do with the content of the film or the

---

[2] who is a professed sadomasochist or one who derives a certain degree of sexual pleasure from the infliction of unnecessary pain towards themselves and others.

alleged theme of domestic violence. Therefore, even if the movie was one of public concern, the mug was not necessary to further that message.

Further, the employee's speech must not merely relate generally to a subject matter that is of public interest, but what is actually said on the topic must itself be of public concern. *See* Koch v. City of Hutchinson, 847 F.2d 1436, 1445-47 (10th Cir.) (en banc), *cert. denied*, 488 U.S. 909, 109 S. Ct. 262, 102 L. Ed. 2d 250 (1988); Wilson v. City of Littleton, Co, 732 F.2d 765, 769 (10th Cir. 1984). Plaintiff's character was that of the other woman in the suggested *ménage-a trios* and the lesbian lover of the doctor's wife. The doctor's wife was the one who was portrayed as being abused during the sadomasochist role-playing scene. Plaintiff's role in the movie was not one of public concern and her appearing in it was strictly personal in nature. Therefore, Plaintiff has failed to establish that acting in the film "Tragic Flaw", allowing her Magnolia coffee mug to appear in the film or that the film's theme were matters of public concern.

The court's analysis could stop here; however, for argument's sake, the court will address the remaining prong of the test. The Pickering Court established that a court has to arrive at a balance between the rights of the employee as a citizen commenting on matters of public concern and the interest of the employer in promoting the efficiency of the public services it provides through its employees. *See* Garcetti, 547 U.S. at 421-22 (*citing* Pickering, at 568, 88 S. Ct. 1731). Magnolia is a community hospital jointly owned by the City of Corinth and Alcorn County, Mississippi. Magnolia has a significant interest in maintaining its reputation within that community. The film's main character was a doctor, two actresses were Magnolia employees at the time the movie was filmed and the Magnolia mug appears in the scene in which the doctor discusses the murder of the two lesbians. The medical overtones along with the connections

associated with Magnolia could easily suggest to a viewer that Magnolia supported, sponsored, contributed to or was in some way involved with "Tragic Flaw," a film containing sexual conduct, sadomasochism, murder, illegal drug use and wrought with extreme vulgar language. There is no doubt this cause would not be before the court had a Magnolia employee, after viewing the film, not been concerned about Magnolia's involvement with the film and expressed that concern to Magnolia's chief executive officer. Additionally, given the controversial contents of the film, the potential for not only causing a strain on working relationships among hospital personnel but also for negatively impacting Magnolia's reputation and business interests is great. Plaintiff's personal interest in acting in the film is greatly overshadowed by Magnolia's legitimate interest in promoting efficiency through instilling confidence in its patients and protecting the reputation and integrity of the hospital.

### iii. Fourteenth Amendment Due Process Claims

The Fourteenth Amendment provides no State may "deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1. Plaintiff confesses that she does not have a property interest claim in this cause of action. The claim is moot and the court will not address it.

The Due Process Clause of the Fourteenth Amendment of the U.S. Constitution protects an individual's liberty interest which is viewed as including an individual's freedom to work and earn a living and to establish a home and position in one's community. Board of Regents of State Colleges, 408 U.S. at 572, 92 S. Ct. at 2706-07. Plaintiff maintains that Defendant violated her due process rights by not giving her notice of her termination, by not allowing her an opportunity to respond, by failing to advise her of her right to appeal her termination and because she was stigmatized by Defendant's conduct.

Plaintiff relies on the case Walker v. City of Hutchinson, 352 U.S. 112 (1956), which provides that the due process clause requires notice of the basis for the proposed action and a fair opportunity to be heard. Plaintiff's reliance is unfounded as Walker involves a lawsuit over a man's property being taken for public use without notice or a hearing to determine fair compensation. Even if the court were to find the case analogous, Plaintiff admitted she had no property right in her employment with Defendant and therefore, is not entitled to the rights afforded those with a property interest.

A public employee is deprived of a protected liberty interest either if terminated for a reason which was (i) false, (ii) publicized, and (iii) stigmatizing to her standing or reputation in her community or if terminated for a reason that was (i) false and (ii) had a stigmatizing effect such that (iii) she was denied other employment opportunities as a result. Board of Regents of State Colleges, 408 U.S. 564, 92 S. Ct. 2701; Codd v. Velger, 429 U.S. 624, 627, 628, 97 S. Ct. 882, 883, 884, 51 L. Ed. 2d 92 (1977) (per curiam); Moore v. Miss. Valley State Univ., 871 F.2d 545, 549 (5th Cir. 1989); Wells v. Hico I.S.D., 736 F.2d 243, 256-57 (5th Cir. 1984), *cert. dismissed*, 473 U.S. 901, 106 S. Ct. 11, 87 L. Ed. 2d 672 (1985). The Fifth Circuit in Cabrol v. Town of Youngsville, 106 F.3d 101, 107 (5th Cir. 1997), stated "a necessary prerequisite to finding the deprivation of a liberty interest in this scenario is that the publicized basis of the termination was false." Cabrol, 106 F.3d at 107 (*citing* Blackburn v. City of Marshall, 42 F.3d 925, 936 (5th Cir. 1995)). "A stigma depriving a person of a liberty interest does so in part because it is a false impression broadcast to either one's personal or professional communities." Id. See Codd, 429 U.S. 624, 97 S. Ct. 882; Ersek v. Township of Springfield, 102 F.3d 79 (3rd Cir. 1996) (harm must be caused by falsity of statements and facts stated were true); Fraternal

Order of Police v. Tucker, 868 F.2d 74, 82 (3rd Cir. 1989) (no liberty interest implicated when press release about discharge of police officers was not misleading).

Plaintiff obviously acted in the movie and the Magnolia mug was likewise obviously in the movie. On the day Plaintiff was terminated, she admitted that the Magnolia mug in the movie was her mug. In fact, Plaintiff has yet to deny it is her mug in the film but has argued that since Magnolia passes them out at health fairs and other community events, the mug could have belonged to anyone. The record is void of any evidence that Plaintiff was terminated for a reason that was false.

Plaintiff points to Rick Napper's comment to church members that the movie was "trash" to support her claim of public disclosure and a stigmatizing effect. Plaintiff did not allege that Rick Napper said anything about her involvement in the film, her termination or even mentioned her name when he stated he heard the movie was "trash." There is no evidence that ties Napper's comment to Plaintiff's termination. Therefore, the court finds that Rick Napper's comment does not equal publicizing Plaintiff's termination.

In addition, Plaintiff cites Defendant's attorney's letter to Malco requesting they cease showing the movie as another way in which she was stigmatized and her termination was publicized. However, the letter Plaintiff references makes no mention of Plaintiff herself or her participation in the movie but it does mention the Magnolia mug and logo and the irreparable harm it could cause Magnolia's reputation as the basis for its request that Malco cease showing the movie. In fact, the letter was written before Plaintiff was ever terminated. This letter further supports Defendant's claim that when it terminated Plaintiff it was concerned about the effect the appearance of the Magnolia mug could have in the community.

Plaintiff also alleges she was unable to obtain employment due to the stigmatizing effect Napper's comment had. Plaintiff failed to present any evidence that supports her claim that the reason for which she was terminated, the manner in which she was terminated or Napper's comment about the movie in anyway played a role in her inability to find a job. In fact, Plaintiff admitted that none of her prospective employers indicated that Magnolia had influenced their decision to hire or not hire her. Though it took Plaintiff around two weeks to find a new job, she was hired approximately two hours after applying for a job with Baptist Memorial Hospital. Though Plaintiff states that the job with Baptist is not commensurate with the pay she was receiving at Magnolia, this is not evidence that she was stigmatized or that the reason for her termination was the reason she did not receive equal pay.

*iv.     State Law Claim*

Plaintiff's last claim is that she was terminated in violation of policies contained in Defendant's handbook. However, Plaintiff, in conceding that she had no property interest in her employment with Magnolia, admitted that she was an at-will employee of Magnolia and therefore, the court will not address her at-will status.

Mississippi follows the common law rule that an at-will employee may quit or may be terminated for "a good reason, a wrong reason, or no reason." Kelly v. Mississippi Valley Gas Co., 397 So.2d 874, 874-875 (1981); Montgomery Ward & Co. v. Skinner, 200 Miss. 44, 25 So.2d 572 (1946); Rape v. Mobile and O. R. R. Co., 136 Miss. 38, 100 So. 585 (1924); Butler v. Smith and Tharpe, 35 Miss. 457 (1858). This court found that "the Mississippi Supreme Court would recognize a limited public policy exception to the employment-at-will rule where an employee alleges that his discharge was motivated by a refusal to engage in illegal acts for his employer." *See* Laws v. Aetna Finance Co., 667 F. Supp. 342, 348-349 (N.D.Miss. 1987).

Plaintiff does not claim that she was fired for failing to do an illegal act required by her employer; therefore there is no applicable exception to Mississippi's long-stating employee at-will rule.

Plaintiff cites the list of twenty-two standards of conduct that may result in termination contained within the employee handbook and claims that since she did not violate any of those twenty-two reasons, that Defendant could not terminate her. The portion of Defendant's handbook that Plaintiff cites clearly states, "These standards of conduct are guidelines or examples, and thus, are not meant to cover every possible situation." The court finds that due to Plaintiff's at-will status and Mississippi's "at-will employee" policy, Magnolia was not required to have a reason or even a good reason for terminating Plaintiff. In addition, the list Plaintiff relies on is not an exhaustive list and therefore, Defendant did not violate its handbook in terminating Plaintiff.

### D. Conclusion

In sum, the court finds there are no genuine issues of material fact as to Plaintiff's claims and Defendant is entitled to judgment as a matter of law on all claims. Defendant's motion for summary judgment will be granted.

A separate order in accordance with this opinion shall issue this day.

This the 19th day of November 2008.

Senior Judge